## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| | * | |
| RORY L. WALLACE | * | |
| | * | |
| | * | |
| v. | * | Civil No. CCB-14-276 |
| | * | |
| | * | |
| THE STATE OF MARYLAND, et al. | * | |
| | * | |
| | ****** | |

## MEMORANDUM

Plaintiff Rory L. Wallace, proceeding pro se, brings this lawsuit against defendants Peter Franchot, Steven Barzal, and the State of Maryland, alleging violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and Md. Code Ann., State Gov't § 20-601, *et seq.*[1] Now pending before the court is the defendants' motion to dismiss or, in the alternative, for summary judgment. The court finds oral argument unnecessary to resolve the issues. *See* Local R. 105.6. For the reasons stated below, the defendants' motion—construed as a motion to dismiss—will be granted.

## BACKGROUND

This case arises out of Wallace's claims that she was discriminated against based on race. During the events alleged in this case, Wallace was employed as a Personnel Administrator for the Maryland Office of the Comptroller. She claims that she "maintained an exemplary work record with the Office of the Comptroller" and "received good performance evaluations" until 2011. (Compl., ECF No. 1, at 4.) In August 2011, Wallace wrote a letter to Len Foxwell, Chief of Staff to the Comptroller, requesting to be considered for the position of Acting Personnel

---

[1] In her complaint, Wallace mistakenly cited an earlier version of the Maryland statute, which has been repealed.

Director.  She believed, however, that "the Defendants were resistant to the very idea of an

African American Female being hired" for this position.  (*Id.*)  Thus, she alleges that she was

never considered for the position, which was given to Barzal, a white man without any advanced

educational degree.

Wallace asserts that she faced hostile treatment from Barzal following his appointment in

September 2011.  He maintained minimal contact with Wallace, using only email to speak with

her.  In December 2011, Barzal issued a "written counseling memo" to Wallace.  (*Id.* at 5.)  She

communicated to Barzal on December 22, 2011, that she felt "'singled' out" and that the written

counseling was discriminatory, but she never received a response from him.  (*Id.*)  Instead, on

May 10, 2012, Barzal issued a formal reprimand, ostensibly for breach of an office protocol, and

"continued to attempt to humiliate and degrade [her] . . . by denying minor schedule changes for

[her] while granting these changes to other staff members."  (*Id.* at 6.)  Barzal issued another

written disciplinary notice against Wallace in June 2012, at which time she was informed that her

unit was being downsized.[2]  Wallace claims she was the only manager whose staff was reduced.

The next month, Wallace was removed from her private office, which was given to a white

manager with less seniority, and placed in a cubicle.  She indicates that Barzal "encouraged other

staff members to treat [her] in a humiliating and disrespectful manner."  (*Id.* at 7.)  Finally, she

overheard Barzal tell another manager that "he could not be a racist because his wife was a

'minority.'"  (*Id.*)

The above events culminated in Wallace being placed on administrative leave on August

1, 2012.  By September 4, 2012, she was no longer permitted to enter the office and, on

---

[2] Wallace's complaint indicates these events occurred in June 2011.  As Barzal had not been appointed Acting Personnel Director at that time, however, this appears to be a typographical error.

September 12, 2012, a year after Barzal had been appointed, she was terminated from her

position at the Office of the Comptroller.[3]

## STANDARD[4]

When ruling on a motion under Rule 12(b)(6), the court must "accept the well-pled

allegations of the complaint as true," and "construe the facts and reasonable inferences derived

therefrom in the light most favorable to the plaintiff." *Ibarra v. United States*, 120 F.3d 472, 474

(4th Cir. 1997). "Even though the requirements for pleading a proper complaint are substantially

aimed at assuring that the defendant be given adequate notice of the nature of a claim being

made against him, they also provide criteria for defining issues for trial and for early disposition

of inappropriate complaints." *Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009). "The

mere recital of elements of a cause of action, supported only by conclusory statements, is not

sufficient to survive a motion made pursuant to Rule 12(b)(6)." *Walters v. McMahen*, 684 F.3d

435, 439 (4th Cir. 2012) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). To survive a

motion to dismiss, the factual allegations of a complaint "must be enough to raise a right to relief

above the speculative level . . . on the assumption that all the allegations in the complaint are true

(even if doubtful in fact)." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal

citations and alterations omitted). "To satisfy this standard, a plaintiff need not 'forecast'

---

[3] While it does not rely on the results of any administrative proceedings in rendering a decision, the court notes that Wallace filed a grievance challenging her termination, and a contested hearing was held on April 2, 2013, before the Maryland Office of Administrative Hearings. An administrative law judge determined that Wallace had been properly terminated because she "violated the confidentiality of the men and women she worked with in the Comptroller's Office by e-mailing their personnel information to her home and to her attorney." (Op., *Wallace v. Comptroller of Md.*, ECF No. 4-16, at 9.) Following her termination, Wallace also filed a charge of discrimination with the Maryland Commission on Civil Rights. Upon investigating Wallace's claims, the Commission concluded that there was no evidence of racial discrimination or retaliation. (*See* Written Finding of the Md. Comm'n on Civil Rights, ECF No. 4-17.)
[4] Wallace objects to the defendants' request for summary judgment. The court, therefore, will treat the pending motion as a motion to dismiss.

evidence sufficient to prove the elements of the claim. . . .  However, the complaint must allege

sufficient facts to establish those elements." *Walters*, 684 F.3d at 439 (quotations and citation

omitted).  "Thus, while a plaintiff does not need to demonstrate in a complaint that the right to

relief is 'probable,' the complaint must advance the plaintiff's claim 'across the line from

conceivable to plausible.'" *Id.* (quoting *Twombly*, 550 U.S. at 570).

## ANALYSIS[5]

### A.  Discrimination Based on Race

Title VII makes it illegal for an employer "to fail or refuse to hire or to discharge any

individual, or otherwise to discriminate against any individual with respect to his compensation,

terms, conditions, or privileges of employment, because of such individual's race, color, religion,

sex, or national origin."  42 U.S.C. § 2000e-2(a); *see also* Md. Code Ann., State Gov't § 20-

606(a).  "Absent direct evidence, the elements of a prima facie case of discrimination under Title

VII are: (1) membership in a protected class; (2) satisfactory job performance; (3) adverse

employment action; and (4) different treatment from similarly situated employees outside the

protected class."  *Coleman v. Md. Court of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010); *see*

*Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 959–60 (4th Cir. 1996) (explaining that,

when there is no direct evidence of a discriminatory hiring decision, the plaintiff must show: "(1)

she is a member of a protected class; (2) her employer had an open position for which she

applied or sought to apply; (3) she was qualified for the position; and (4) she was rejected for the

---

[5] The court notes that there is a dispute over whether Franchot or Barzal may be held liable for
violating Title VII.  To the extent Wallace wishes to hold Franchot and Barzal liable in their
personal capacities, such claims are not cognizable.  *See Lissau v. S. Food Serv., Inc.*, 159 F.3d
177, 180 (4th Cir. 1998) (holding that "supervisors are not liable in their individual capacities for
Title VII violations").  Assuming, however, that Wallace intends to sue them in their official
capacities, the court determines, as explained below, that she fails to state a claim upon which
relief can be granted.

position under circumstances giving rise to an inference of unlawful discrimination"); *see also*

*Dobkin v. Univ. of Baltimore Sch. of Law*, 63 A.3d 692, 699 (Md. App. 2013) ("In the absence of

direct evidence [of discriminatory intent], Maryland Courts have traditionally held that in

employment discrimination actions, parties must engage in the four-part burden-shifting

paradigm described by the United State Supreme Court . . . .").

Wallace fails to allege facts that plausibly support a claim of discrimination based on her

former employer's decision not to hire her for the position of Acting Personnel Director.

Wallace's complaint alleges little, if any, facts to support she was qualified for the position to

which she applied.  She states that she had a graduate degree and had been working at the Office

of the Comptroller for just over five years when she applied for Acting Personnel Director, but

she offers nothing to suggest those educational and work experiences met the requirements for

the position.  Nevertheless, even assuming she had the necessary qualifications for the position,

she does not state facts sufficient to support a plausible inference of discrimination.  She notes

that, when she requested to be considered for Acting Personnel Director, she wrote a letter to the

Chief of Staff, who was a white man.  But there is no indication the Chief of Staff was even

involved in making the decision to hire Barzal, or that he wielded such control over the

individuals who made that decision that he might direct them to make discriminatory selections.

Nor is Wallace's conclusory assertion that "the Defendants were resistant to the very idea of an

African American Female being hired" or her observation that Barzal is a white man enough to

infer discrimination.  (Compl. at 4.)  She refers to no discriminatory statements or actions leading

up to Barzal's hire, and provides very little information about his qualifications, other than her

assertion that he did not possess an advanced degree.  As indicated above, however, she does not

maintain that an advanced degree was required for the position of Acting Personnel Director.

Further, she acknowledges that Barzal previously was the "Fair Practice/Equal Opportunity Officer" for the Comptroller's Office.  (Wallace Opp., ECF No. 9, at 7.)  The court cannot presume discrimination simply because another candidate was chosen over Wallace.

Turning to Wallace's allegations regarding Barzal's treatment of her, the court determines, to the extent she claims discrimination based on his lack of contact with her except via email, his decisions to deny "minor schedule changes," and her movement from an office to a cubicle, she fails to state a claim upon which relief can be granted.  (Compl. at 6.)  As stated by the Fourth Circuit, "[a]n adverse employment action is a discriminatory act which adversely affect[s] the terms, conditions, or benefits of the plaintiff's employment."  *James v. Booz-Allen & Hamilton, Inc.*, 368 F.3d 371, 375 (4th Cir. 2004) (citation and internal quotation marks omitted).  "Conduct short of 'ultimate employment decisions' can constitute adverse employment action," *id.* at 375–76, but "[a]n action that merely causes an employee irritation or inconvenience" does not qualify.  *Spriggs v. Public Serv. Comm'n of Md.*, 197 F. Supp. 2d 388, 393 (D. Md. 2002).  The conduct alleged here falls into the latter category, as the court cannot conclude it was so significant as to affect the terms, conditions, or benefits of Wallace's employment.  Although Wallace may find a cubicle less desirable than an office, she offers no facts to suggest the relocation resulted in poor working conditions, or otherwise had "some significant detrimental effect."  *Cf. Boone v. Goldin*, 178 F.3d 253, 255–57 (4th Cir. 1999) (deciding that an employee did not suffer an adverse employment action, even though she was assigned to a new position that might be less appealing and cause "some modest stress").

Moreover, even if the court were to determine Barzal's lack of communication and scheduling decisions constitute adverse employment action, Wallace alleges no facts to suggest that similarly situated employees outside her protected class were treated more favorably.  *See*

*Haywood v. Locke*, 387 Fed. App'x 355, 359 (4th Cir. 2010) (citation and internal quotation marks omitted) ("Such a showing would include evidence that the employees dealt with the same supervisor, [were] subject to the same standards and . . . engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it.").[6]  Neither her complaint nor her opposition brief mentions whether employees of a different race had more than email communication with Barzal.  Wallace also makes the conclusory statement that "other staff members" were granted minor schedule changes, without any specification as to whether those employees were of the same or a different race.  (Compl. at 6.)

Likewise, Wallace does not allege sufficient facts to plausibly establish that her termination or Barzal's decisions regarding discipline and staffing were based on race. Wallace's complaint makes no reference to how Barzal approached the disciplinary process for employees of a different race.  Rather, she asserts only hypothetically that the conduct for which she was disciplined in June 2012 "would have gone virtually unnoticed if the issue did not involve [her]."  (*Id.*)  She also maintains that she was the only manager whose staff was reduced, but makes no allegation that the remaining managers were of the same or another race. Accepting, as it must, that Barzal made a statement that "his wife was a 'minority,'" the court still cannot conclude that all the allegations, taken together in the light most favorable to Wallace, push her discrimination claim across the line from merely conceivable to plausible.  (*Id.* at 7.)  Accordingly, Wallace's discrimination claim must be dismissed.

---

[6] Unpublished cases are cited only for the soundness of their reasoning, not for any precedential value.

### B. Hostile Work Environment

To establish a hostile work environment claim, the plaintiff must establish that: "(1) she experienced unwelcome harassment; (2) the harassment was based on her gender, race, or age; (3) the harassment was sufficiently severe or pervasive to alter the conditions of employment and create an abusive atmosphere; and (4) there is some basis for imposing liability on the employer." *Bass v. E.I. DuPoint de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003). The plaintiff must show not only that she subjectively believed her workplace environment was hostile, but also that a reasonable person would have found it to be objectively hostile. *Equal Emp't Opportunity Comm'n v. Sunbelt Rentals, Inc.*, 521 F.3d 306, 315 (4th Cir. 2008). The court considers a number of factors in determining whether a reasonable person would perceive a workplace environment to be sufficiently hostile, such as "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's performance." *Faragher v. City of Boca Raton*, 524 U.S. 775, 787–88 (1998).

Wallace fails to make factual allegations of harassment that could plausibly be considered severe or pervasive. To support her hostile work environment claim, she alleges broadly that Barzal "encouraged other staff members to treat [her] in a humiliating and disrespectful manner." (Compl. at 7.) This claim, however, is unsupported by any factual allegations as to how her fellow employees treated her, or how often they engaged in this conduct. She makes no allegations of derogatory comments or threatening behavior and provides only conclusory statements that she was somehow treated less favorably than other co-workers. *See Causey v. Balog*, 162 F.3d 795, 801–02 (4th Cir. 1998). Furthermore, as already determined, Wallace fails

to allege facts that plausibly establish how Barzal's conduct towards her was based on race.  The

court, therefore, will dismiss her claim for hostile work environment.

### C. Retaliation

Finally, to make a claim for retaliation, the plaintiff must establish the following three

elements: (1) *[s]he engaged in a protected activity*; (2) [s]he suffered an adverse employment

action; and (3) there is a causal connection between the protected activity and the adverse

employment action.  *Holland v. Washington Homes, Inc.*, 487 F.3d 208, 218 (4th Cir. 2007)

(emphasis added).  There are two categories of protected activities: (1) "opposition" and (2)

"participation."  *Equal Emp't Opportunity Comm'n v. Navy Fed. Credit Union*, 424 F.3d 397,

406 (4th Cir. 2005).  "[P]rotected oppositional activities may include staging informal protests

and voicing one's own opinions in order to bring attention to an employer's discriminatory

activities as well as complain[ts] . . . about suspected violations."  *Id.* (citations and internal

quotation marks omitted).  Activities that constitute "participation" may include "(1) making a

charge; (2) testifying; (3) assisting; or (4) participating in any manner in an investigation,

proceeding, or hearing under Title VII."  *Laughlin v. Metro. Washington Airports Auth.*, 149

F.3d 253, 259 (4th Cir. 1998); *see also* 42 U.S.C. § 2000e-3(a).

The defendants argue that Wallace's retaliation claim must be dismissed because seeking

a promotion is not protected activity under Title VII.  Insofar as Wallace suggests that she

suffered adverse employment action as a result of applying for the position of Acting Personnel

Director, she does not state a claim upon which relief may be granted.  The defendants are

correct that applying for a job position does not fall within either category of protected activity

addressed above.  But that is not the end of the analysis, as the court must consider whether

Wallace's December 22, 2011, comments to Barzal may form the basis of a retaliation claim.

Even if the court assumes her comments constitute protected oppositional activity, Wallace alleges no facts to suggest a causal connection between that activity and the alleged employment actions taken by Barzal.  To the contrary, her complaint alleges that, after she told Barzal she felt "'singled' out," nearly five months passed before he engaged in any retaliatory conduct. (Compl. at 5.)  The length of time between Wallace's protected activity and Barzal's conduct negates any reasonable inference of causation.  *Cf. King v. Rumsfeld*, 328 F.3d 145, 151 & n.5 (4th Cir. 2003) (determining an employee made out a *prima facie* case of retaliation when he was terminated two months and two weeks after he filed a complaint, although the length of time was "sufficiently long so as to weaken significantly the inference of causation between the two events").  The court will dismiss Wallace's retaliation claim.

## CONCLUSION

For the reasons stated above, the court will grant the defendants' motion, and Wallace's complaint will be dismissed.  A separate order follows.


May 23, 2014                                    _____/s/_____
Date                                            Catherine C. Blake
                                                United States District Judge